**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 18, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2022AP1882**

**STATE OF WISCONSIN**

Cir. Ct. No.  2021TP27

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO E. B.-H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

E. B.,

      RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County:
JOSEPH R. WALL and ELLEN R. BROSTROM, Judges. *Affirmed*.

¶1    DUGAN, J.[1]  Elizabeth appeals from an order of the circuit court terminating her parental rights to her son, Everett.[2]  On appeal, she argues that the circuit court erroneously exercised its discretion at the disposition hearing when it weighed the factors found in WIS. STAT. § 48.426(3) and found that it was in Everett's best interest to terminate her parental rights.[3]  For the reasons set forth below, this court affirms.

## BACKGROUND

¶2    Everett was born prematurely to Elizabeth on April 18, 2019.  At the time of his birth, Everett tested positive for THC, cocaine, and heroin.  As a result, Everett remained in the hospital for an extended period of time.  The Division of Milwaukee Child Protective Services (DMCPS) became involved with Everett the day after his birth and placed Everett with a foster family upon his discharge from the hospital.  Everett has remained with the same foster family since his discharge from the hospital.

¶3    The State filed a petition to terminate Elizabeth's parental rights to Everett on January 21, 2021, on the grounds that Elizabeth failed to assume parental responsibility and that Everett was a child in need of protection or

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reference and to maintain the confidentiality of these proceedings, this court refers to the mother and son using pseudonyms.

[3] The Honorable Ellen R. Brostrom presided over the proceedings to terminate Elizabeth's parental rights and entered the order doing so.  The Honorable Joseph R. Wall was assigned as the responsible court official following the order to terminate Elizabeth's parental rights.

services.[4]  Elizabeth entered a plea of no contest to the ground of failure to assume parental responsibility, and the case moved to the disposition phase of the proceedings.  The disposition hearing was held on June 6, 2022.

¶4      At the disposition hearing, the circuit court heard testimony from several witnesses, including the case manager, the foster mother, Everett's father, and Elizabeth.  The case manager testified that Everett was born prematurely and addicted to several illegal substances, including THC, cocaine, and heroin.  She further testified that Elizabeth admitted to using drugs, including having used cocaine the morning that Everett was born, and that Elizabeth's drug use continued to present a concern for the past three years since Everett's birth.  Indeed, she described that Elizabeth would present as under the influence at visits with Everett, and she stated that Elizabeth would have trouble staying awake, to the point where she even dropped Everett because she fell asleep.

¶5      She further testified that Elizabeth had weekly visits scheduled with Everett, but that the visits could not occur at Elizabeth's home because of the state of the home, which included the presence of cat urine and piled garbage throughout the home.  She also testified that Elizabeth was often late for the visits and visits occurred jointly with Everett's father.  She testified, though, that she did not believe that Everett had any substantial relationship with Elizabeth and that Everett had instead found a home with his foster family.  As she testified, she believed that Everett viewed visits with Elizabeth more as "playtime" with a "babysitter" because the "frequency and the quality of the visits have just not

---

[4] The petition also sought to terminate the rights of Everett's father, but the rights of Everett's father are not at issue in this appeal.

provided a substantial bonding situation." She further confirmed that Everett did not have any biological siblings and had not met any of his extended family.

¶6 Everett's foster mother testified that Everett was discharged from the hospital to her care and that she and her husband have provided for Everett since that time. She testified that Everett initially experienced several difficulties as a result of the presence of illegal substances in his system; however, she also described that Everett was now healthy and no longer experiencing any issues. She described that Everett was a part of their family and they were willing to adopt him; she also testified that she would be willing to maintain contact with Everett's mother and father, if it was considered safe for Everett to do so. In fact, she described that she and her husband have adopted children in the past and had maintained relationships with the biological parents of those children.

¶7 Everett's father testified that he lived with Elizabeth and provided for her. He further stated that he was present at Everett's birth, but he was unable to remain at the hospital as a result of his work schedule. He testified that he wanted to keep his family together and he regularly attended visits with Everett. He was not aware of the extent of Elizabeth's drug use; however, he would be willing to end his relationship with her if it meant that he would be able to maintain his parental rights to his son.

¶8 Elizabeth testified that she has struggled with drug addiction and admitted to using cocaine and heroin during her pregnancy. She further testified that she has been attending methadone clinics, and she has made progress in

controlling her addiction.[5] In particular, she indicated that it had been over a year since she did any marijuana, it had been about five months since she last did heroin, and it had been about two months since she last had any cocaine. She further testified that she understood that her drug addiction would be a lifelong struggle for her. She also testified that she was terrified of the proceedings to terminate her parental rights, and she did not want to lose her son.

¶9     Ultimately, the circuit court found that it was in Everett's best interest to terminate Elizabeth's rights. The circuit court acknowledged Elizabeth's efforts to control her drug addiction, but the circuit court found that overall Everett needed permanency and stability at this point in his life. The circuit court further found that terminating Elizabeth's parental rights and allowing Everett to continue his life with his foster family provided the permanency and stability that Everett needed, and that Everett was likely to be adopted by his current foster family. The circuit court further noted that Everett had no siblings, had never met any members of his extended family, and did not have a substantial bond with Elizabeth. The circuit court observed that Everett has never known any home other than the home of his foster family, and that Everett was thriving in his current environment. The circuit court further stated that Everett could not communicate his wishes due to his young age, but if he could, the circuit court imagined Everett would want to stay with his foster family.

¶10     Elizabeth now appeals.

---

[5] By contrast, the case manager testified that she was unable to confirm Elizabeth's attendance at any of the methadone clinics that Elizabeth reported to attend.

## DISCUSSION

¶11   "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  On appeal, Elizabeth argues that the circuit court erroneously exercised its discretion during the second part of the proceedings—the disposition hearing—when it found that it was in Everett's best interest to terminate her parental rights.  Specifically, Elizabeth argues that the circuit court erroneously weighed the factors found in WIS. STAT. § 48.426(3).  She highlights her own testimony in which she stated that she is attending methadone clinics, is working to control her addictions, does not want to lose her son, and believes she has a substantial relationship with him.  She also argues that the circuit court erroneously placed emphasis on the testimony from Everett's foster mother that she would be willing to maintain contact with Elizabeth because this stated intent "has no legal authority or enforceability."

¶12   The best interest of the child is the prevailing standard at the disposition phase of termination of parental rights proceedings, and in determining the best interest of the child, the circuit court must consider the six factors enumerated in WIS. STAT. § 48.426(3).  *State v. Julie A.B.*, 2002 WI 95, ¶4, 255 Wis. 2d 170, 648 N.W.2d 402.  These factors include:

> (a)  The likelihood of the child's adoption after termination.
>
> (b)  The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c)  Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d)  The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

¶13    "The ultimate determination of whether to terminate parental rights is discretionary with the circuit court." *State v. Margaret H.*, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475.  Consequently, the weighing of the factors at the disposition hearing is within the trial court's discretion, and this court "will sustain the circuit court's ultimate determination in a proceeding to terminate parental rights if there is a proper exercise of discretion." *Id.*, ¶32.  "A proper exercise of discretion requires the circuit court to apply the correct standard of law to the facts at hand." *Id.*  In this case, a review of the record of the disposition hearing, demonstrates that the circuit court applied the correct standard of law to the facts of this case.  Accordingly, this court concludes that there the circuit court did not erroneously exercise its discretion.

¶14    As noted, the circuit court heard testimony from several witnesses connected to Everett's case at the disposition hearing, including Elizabeth, the father, the case manager, and the foster mother.  At the conclusion of that testimony, and as conceded by Elizabeth, the circuit court discussed each of the factors found in WIS. STAT. § 48.426(3) on the record and the testimony related to each factor. *See Margaret H.*, 234 Wis. 2d 606, ¶35 ("[T]he record should reflect adequate consideration of and weight to each factor.").  Rather, Elizabeth argues that the circuit court did not give Elizabeth's own testimony adequate weight and

7

gave too much weight to the foster mother's stated intent to maintain contact with Elizabeth.

¶15     While Elizabeth is correct that Elizabeth's testimony and the foster mother's stated intent to maintain contact with Elizabeth are appropriate factors for the circuit court to consider, the circuit court nevertheless retains discretion regarding the weight assigned to each factor and the credibility assigned to each witness's testimony. *See **David S. v. Laura S.**,* 179 Wis. 2d 114, 150, 507 N.W.2d 94 (1993) ("A determination of the best interests of the child in a termination proceeding depends on first-hand observation and experience with the persons involved and therefore is committed to the sound discretion of the circuit court.").

¶16     Here, the record reflects that the circuit court recognized the steps that Elizabeth had recently taken to control her addiction and her efforts to maintain a relationship with Everett; however, the circuit court ultimately found that it was in Everett's best interest to terminate Elizabeth's parental rights in order to best serve Everett's best interest and provide stability and permanency. *See* WIS. STAT. § 48.426(3)(f).   As the circuit court stated, "from [Everett]'s perspective [his foster family is] his family.  He has been with them since he was released from the hospital.  He has gone through some really hard times that they were there to help him navigate."  Moreover, "during those first six months, in particular, it sounds like there wasn't a whole lot of engagement from the parents," and while the parents "have done a lot of visits[,] … it's a very small percentage of [Everett]'s life[.]"  The circuit court also stated that Elizabeth was "still in the throes of getting it [her drug addiction] under control."  Thus, balancing the relationship Everett had with his foster family, the relationship that Everett had with his parents, Elizabeth's progress with her drug addiction, and the remaining factors, the circuit court found that terminating Elizabeth's parental rights was

overall in Everett's best interest because it provided him with the stability and permanency he needed in light of the strong relationship he had with his foster family that wished to adopt him, his lack of relationship with his biological parents, and the fact that Elizabeth still needed more time in her attempts to control her addiction.

¶17     Thus, this court concludes that the circuit court did not erroneously exercise its discretion in regards to its consideration of Elizabeth's testimony. The record reflects that the circuit court considered Elizabeth's testimony in the context of the other testimony given at the disposition hearing and as relevant to the factors found in WIS. STAT. § 48.426(3). *See Margaret H.*, 234 Wis. 2d 606, ¶32. While Elizabeth testified to making progress with her addiction, not wanting to lose her son, and having a substantial relationship with him, the case manager and foster mother testified that Elizabeth played a small role in Everett's life, Everett fit well within his foster family, and there were ongoing concerns with Elizabeth's drug addiction. The circuit court's decision adequately reflects consideration of all the testimony given, and therefore, the circuit court did not erroneously exercise its discretion with the weight it gave to Elizabeth's testimony when evaluating the factors found in § 48.426(3).

¶18     Similarly, this court concludes that the circuit court did not erroneously exercise its discretion in regards to the foster mother's stated intent to maintain contact with Elizabeth. "In its discretion, the court may afford due weight to an adoptive parent's stated intent to continue visitation with family members[.]" *Margaret H.*, 234 Wis. 2d 606, ¶29.

¶19     Furthermore, the circuit court's consideration of the foster mother's intent here is bound up with a credibility finding. This court will not upset a

credibility determination unless it is clearly erroneous, *see* WIS. STAT. § 805.17(2), and this court concludes that the circuit court's credibility determination here is well supported by the record. As the foster mother testified, she and her husband have adopted children in the past and have maintained relationships with the biological parents of those children. Further, the circuit court stated, "I believe the [foster mother] that they're going to mitigate any harm severing those relationships will cause because they've already demonstrated that they're prepared to do that with other adopted children." The history of the foster mother and her husband maintaining relationships with the biological parents of their other adopted children supports the circuit court's finding of credibility. Thus, this court will not upset the circuit court's credibility determination as to the foster mother's stated intent here.

¶20 Accordingly, this court concludes that the circuit court appropriately exercised its discretion in finding it was in Everett's best interest to terminate Elizabeth's parental rights, and the circuit court's order is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.